**A. M. BARR REALTY, Appellant,**

v.

**F. Victor GUIDICE and Florence J. Guidice, Appellees.**

**No. 6576.**

District of Columbia Court of Appeals.

Argued Oct. 12, 1972.

Decided Feb. 6, 1973.

Jack C. Sando, Washington, D. C., with whom Mark B. Sandground, Washington, D. C., was on the brief, for appellant.

Herman Miller, Washington, D. C., for appellees.

Before PAIR and HARRIS, Judges, and HOOD, Chief Judge, Retired.

PER CURIAM:

Appellant a real estate brokerage firm (hereafter called the broker) sued appellees (hereafter called the owners) for a commission claimed to have been earned by finding a purchaser for their residence. The owners denied liability and counterclaimed for one-half of the deposit placed with the broker by the prospective purchaser. At the conclusion of the broker's case the trial court directed a verdict against the broker on its claim and also directed a verdict for the owners on their counterclaim.

Viewing the broker's evidence in its most favorable light, as we must, the following facts were shown. The owners listed their property for sale with the broker under a 90-day exclusive listing. Within that time the broker secured an offer from the Ambassador of a foreign country (hereafter called the Ambassador) with a $3,000.00 deposit. This offer was accepted by the owners. It called for settlement "within 90 days . . . or upon completion of financing arrangements or as soon thereafter as a report on the title can be secured . . . ." The 90-day period expired on August 29, 1969. Just prior to that date the broker "began to set up the settlement," but the owners denied the existence of any contract. Under date of August 30th the owners sent a letter to the broker stating that "the sales contract we signed . . . expired on August 29, 1969 at midnight. The property is not for sale at this time." Thereafter the owners and the Ambassador apparently considered the transaction as terminated or abandoned and made no effort to complete the sale. On November 15th the broker returned the $3,000.00 deposit to the Ambassador and in January 1970 brought this action.

▪ In directing a verdict against the broker, the trial court ruled that the broker had failed to carry the burden of proving it had produced a ready, able and willing buyer. Generally, it is incumbent upon a broker, suing for a commission, to prove that he produced a purchaser ready, able and willing to buy on terms acceptable to the owner; and we agree with the trial court that there was little evidence that the Ambassador, who was not a witness, made any effort to effect a settlement of the contract. However, the rule above stated has an exception. In Thomas v. Jackson, D.C.App., 252 A.2d 503, 505 (1969), this court said:

> [W]hen the owners of realty accept a prospective buyer's offer by entering into a contract of sale and then prevent the carrying out of the contract by their own default, the burden is upon them to show that the buyer would have been unable or lacked the intent to carry out the sale. . . .

▪ Here the broker's uncontradicted testimony was that prior to the settlement date the owners denied the existence of the contract, the existence of which they later admitted when time for settlement had expired. Denial of the existence of the contract indicated that the owners had no intention of completing the contract and may have prevented or at least discouraged any effort by the Ambassador to secure a settlement. If such was the case the burden was on the owners to show that the Ambassador was not ready, able and willing to buy.

▪ There were too many unanswered questions in the testimony to permit a directed verdict. Among those questions were: why did the owners deny the existence of a contract? Did either the owners or the Ambassador desire a settlement or were both willing to abandon the contract? Why did the owners make no claim that the Ambassador had breached the contract and forfeited the deposit until this action was brought by the broker?

We do not intend by what has been said to indicate that either party is or is not entitled to prevail. All we hold is that on the state of the record at the close of the broker's case the directed verdicts were improper.

Reversed with instructions to grant a new trial.